HANNAH M. BOLTON AND OTHERS *v.* MARY E. WILLIS AND OTHERS.

**Adverse Possession—Priority of Right.**

> As between persons who claim title by adverse possession, the
> law favors those who have long held undisturbed possession rather
> than those who are asserting possession for a much shorter dura-
> tion.

APPEAL FROM HART CIRCUIT COURT.

January 3, 1873.

OPINION BY JUDGE PRYOR:

The appellees show a continued and uninterrupted possession of
the land in controversy for forty years prior to the institution of
the present action. The facts proven conduce to show that Gaddie,
the ancestor of the appellees, purchased the land of one Dudley
Rountree in the year 1824 or 1825. Rountree purchased of one
Snead in the year 1813, and Snead acquired his title under a sale
of the land for taxes made in the year 1806 and received a deed from
the register of the land office in the year 1812. The land was sold
for taxes due by Long, the ancestor of the appellants, and under
whose title they now claim to hold as against the appellees. There
is no written evidence of title exhibited by the appellees so far as
the record shows, but their claim of title was asserted through their
ancestor, Gaddie, in the year 1825 under his purchase from Roun-
tree. He took the actual possession of the land in the year 1826 and
has held possession from that time until his death, and the appel-
lees, his heirs at law, have continued in the possession since that
time. Gaddie had the land surveyed in 1824 or 1825 and has all
the time claimed to a well-defined marked boundary. He cleared
and opened a *farm* on this land and made many improvements upon
it, erecting a dwelling house and other outbuildings for the con-
venience and enjoyment of his home.

The defendant so far as the record shows never made any actual
entry on the land until the year 1844. Thirty-eight years had then
elapsed from the date of the sale to Snead, thirty-one years from
the date of the sale of Snead to Rountree and twenty years from
Rountree's sale to the ancestor of the appellees.

The actual occupancy of the disputed boundary by Gaddie, as well as the extent of his claim, was as *noto vois* as the Pollard patent for the 19,000 acres of land under which the appellants derive their title. The appellants lived within two miles of Gaddie's residence, both parties living within Pollard's patent boundary. Their families were upon intimate terms, and no complaint was ever made by the appellants of the alleged appropriation by Gaddie of this tract of land to his own use and possession, until shortly before the institution of this suit, when the suit in equity was instituted in the year 1854 by the appellants against the unknown heirs of Pollard and Phillips as well as the tenants in possession for the purpose of perfecting and quieting their title to all the land within the Pollard patent. Gaddie was not made a defendant, although at that date the appellants must have known through E. V. Bolton that Gaddie was asserting claim to the boundary of land purchased by him of Rountree, and his actual occupancy and the improvements made by him were so notorious as not to escape their attention.

The proof also tends strongly to show that Gaddie's right to this boundary of land was recognized as that of the appellees, or their ancestor, by the appellants.

E. V. Bolton entered upon this land by the consent of Gaddie and under an agreement to pay him for all that portion of it included within his, Gaddie's, boundary and looking to the statements of E. V. Bolton connected with appellants' own proof, he at the time he made his improvements, was obtaining information from Gaddie as to the extent of his boundary, and asserted no right or claim to enter within Gaddie's survey by reason of his mother's claim.

It is true that he afterwards refused to surrender the possession, or pay for the land, and claimed to hold under the appellants, but there is no proof showing that the entry was made under the title of the appellants, but on the contrary it is conclusive that it was made under Gaddie's title so far as the disputed land is concerned; and with the agreement to pay therefor on the part of E V. Bolton. Bolton seems to have been avoiding any interference, and made inquiry of Gaddie as to where he should locate the buildings in order to place himself outside of his boundary.

It is true that the possession of a junior patentee must have continued for such a length of time as to toll the right by those claiming under an older patent in order to give title, and it is also well

settled that an entry by the elder patentee or, those claiming under him within an interference between an elder and junior patent before the right of entry is tolled, would prevent the running of the statute, and give to the elder patentee the possession to the extent of his boundary, but this principle can not be made to apply in the present case. No entry was ever made by the appellants within the boundary of the appellees, and even if the entry of E. V. Bolton can be regarded as having been made by him as the tenants of the appellants, then the possession of Rountree and his vendee, Gaddie, with their claim of title had already constituted a complete bar to the appellants' recovery. The entry by the appellants in 1844 gave them no right to enter upon the boundary of Gaddie for the reason that his vendee and himself had then held the possession of the land for twenty years. It is conceded that the farm of the appellees is within the boundary of the deed to Rountree. The latter had the land surveyed to Gaddie in 1824 and his possession must enure to the benefit of his vendees. Rountree claimed and held under an executed contract made in 1813. The appellees are not controverting his title, nor did they or their vendor enter upon the land as tenants of Long, but claimed by reason of the purchase from Snead. Rountree and the appellees are not looking to the appellants for title, but assert an absolute right to the land by reason of their purchase from those who had deeds regularly recorded for this land as far back as 1812. *Gregory v. Nesbit,* 5 Dana 422; *Bell v. Fry,* 5 Dana 345; *Moore v. Webb,* 2 B. Monroe 282.

Conceding, however, that no adverse holding can be relied on by the appellees, still we can not decide from the facts in this record that the deed to Snead is null and void. This deed was made in 1812. The certificate given to Snead evidencing the sale was doubtless for fifteen thousand acres out of the nineteen thousand acre patent. The land had been entered by Long or some one for him, the taxes were unpaid, and this variance, whether material or not, between the certificate and the deed, will not invalidate it as against innocent purchasers who obtained their title under it more than half a century ago, and with that title have held the undisturbed possession for forty years. Such a possession should be favored in law, and particularly against those who are asserting only a possessory right of a much shorter duration.

This court has already decided in regard to the other portions of the Pollard patent boundary in a controversy between the appellants and other parties in possession, as purchasers or tenants, that the deeds from Pollard to Phillips and from Phillips to Long could not be read as evidence to establish title, and whilst the judgment or record evidencing the title of the appellants (in the suit in equity by them against Pollard's heirs) to this land should have been admitted, as the appellants had the right to show title in themselves or even in a stranger in order to defeat the action, still we can not see how they were prejudiced by the action of the court in rejecting it as evidence, as the purchase by Rountree and the possession under it must necessarily have resulted in a verdict for the appellees. These deeds, by which the appellants are divested of title, are offered and read as evidence by them, and even if the commissioner's deed in the suit in equity and the patent connect the appellants with Long's and Phillips' title, still as to the land in controversy embraced within the boundary of the deed to Rountree the appellees exhibit such a title as authorizes a recovery.

The evidence shows beyond doubt that the land in controversy is within the boundary claimed by the appellees and that E. V. Bolton entered under Gaddie, their ancestor, and not under the appellants. The appellant was not entitled to notice, nor was a demand necessary for the possession, as after his entry upon the land he ignored the title of Gaddie, and claimed to hold under that of his mother.

The instructions asked for by the appellants were all properly refused. The only questions for the jury to determine were as to the extent and duration of appellees' possession. These propositions were embraced in the instructions given at the instance of the appellees.

Judgment *affirmed*.

*Underwood, for appellants.*

*Barnett, Edwards, Harding, for appellees.*