**Hager WIREMAN, Appellant,**

v.

**Nannie SALYER, Appellee.**

Court of Appeals of Kentucky.

June 10, 1960.

W. A. Johnson, Paintsville, for appellant.

Earl R. Cooper, Salyersville, for appellee.

STANLEY, Commissioner.

This is an appeal from a judgment for $5,000 for personal injuries sustained by

the appellee, Mrs. Nannie Salyer, when a small truck in which she was riding left the highway and turned over. The truck belonged to the appellant, Hager Wireman, and was being driven by his son Austin. Two questions of liability are presented. One is whether there was sufficient evidence of negligence of the driver to submit the case to the jury. The other is the application of the Family Purpose Doctrine. The question of excessive damages is also argued.

1. The plaintiff's sister, Mrs. Ada Wireman, who is the defendant's wife, was also in the car. The only evidence as to the accident was the testimony of Mrs. Salyer. It was limited to saying, "All I know, it just left the road," and "went over through a field" and "turned over." The car, she estimated, was "going around 35 or 40." She further stated there was no other vehicle on the road or anything else to cause the truck to leave the road. The condition of the highway and whether it was on a curve or straight road are not revealed.

It is, of course, elementary law that the burden is upon a plaintiff seeking to recover damages for negligence of another person to prove it. But since in the ordinary course of things a motor vehicle under the exclusive control and management of the driver does not run off the road if due care is exercised or there is no intervening cause, the happening gives rise to the inference of negligence of the driver; and this is sufficient to shift the burden to the responsible party to explain away the presumption. This is, of course, the application of the familiar res ipsa loquitur rule. Fannin v. Lewis, Ky., 243 S.W.2d 60; Supplee v. Webster, Ky., 320 S.W.2d 615. It was proper to submit the case to the jury on the issue of negligence.

2. The defendant, Hager Wireman, lived on a farm with his wife and his twenty-three-year old son, Austin, and all of them worked on the farm. Wireman was also employed elsewhere as a miner. The small truck involved in the accident was used in the farming operations and for any other purpose the family desired, although it appears that Wireman usually claimed priority of use to drive it to his outside work.

On Sunday, the day before the accident on December 24, 1956, the Wiremans, Mrs. Salyer and several other members of the family of Austin Allen, who was the father of Mrs. Wireman and Mrs. Salyer, gathered at his home, where he was sick. Allen had a small crop of tobacco which he wanted taken to market. The Wireman crop had already been taken to the Winchester market and was scheduled to be sold the next day. The evidence is conflicting whether Mrs. Wireman told her father that she was going to Winchester to get their "tobacco check" and she would take his tobacco—as an incidental matter—or that she would take his crop and while in Winchester would get their check and go shopping in Lexington—as an incidental matter. But there is no disagreement that Wireman expressly consented to the use of the truck for the trip and agreed to use his wife's Ford in going to work that day. He and other adult members of the family pitched in and loaded up the tobacco in the truck that Sunday afternoon.

Mrs. Salyer was invited by Mrs. Wireman to go along on the shopping expedition.

When the party got to Winchester, they learned the Wireman tobacco had not been sold. The father's tobacco was unloaded; and after the ladies had shopped around for a little while in Winchester, they started home. The accident happened on the way.

Whether the driver of the truck—the defendant's adult son and a member of his household—came within the operation of the Family Purpose Doctrine is not material. Even if he did not, he was directed or permitted by the defendant's wife—who clearly was within its operation

—to drive the truck on this occasion. It was in fact her trip. In our opinion, the reasons justifying the imposition of liability on the owner of the motor vehicle under the application of the doctrine to his wife apply under the circumstances of the case. Ulman v. Lindeman, 44 N.D. 36, 176 N.W. 25, 10 A.L.R. 1440; Moran v. Moran, 124 Neb. 379, 246 N.W. 711; Note, 88 A.L.R. 603. That doctrine, as early enunciated in Stowe v. Morris, 147 Ky. 386, 388, 144 S.W.2d 52, 39 L.R.A.,N.S., 224, and later in Kennedy v. Wolf, 221 Ky. 111, 298 S.W. 188, and many other cases, is that where the automobile is a family car, i. e., has been purchased and is owned for the convenience, pleasure or benefit of the owner's wife and his family, and it is at the time of the accident being used by a member of the family in carrying out that general purpose or in pursuance to the general authority of the father to take it by a member of the family at will, the owner is responsible. In this case, the use of the car was truly a "family" purpose and enterprise, regardless of the primary reason for going to Winchester.

■ 3. The plaintiff suffered a broken collar bone and chest injuries. She was placed in bandages and wire fastenings and was in and out of hospitals for surgery and treatment for nine months after the accident. Obviously, the woman suffered great pain during the time. Since the accident she has been unable to do physical work as before and has impairment in her arm and hand. One of her doctors testified in answering a question as to permanency of the plaintiff's injuries:

> "That is impossible to state categorically. I would anticipate that this lady will have periodic discomfort in the area of her left shoulder. At times she will be completely free of any pain or limitation of motion and at other times it would be moderately severe. I would predict on the basis that her original injury now, that I would expect the present condition with certain variations to be on a permanent basis."

Hospital and doctors' bills amounted to several hundred dollars. The verdict of $5,000 is not excessive.

The judgment is affirmed.